***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Rowell. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence or rehear the parties or their representatives. The Full Commission MODIFIES and AFFIRMS the Opinion and Award of Deputy Commissioner Rowell.
 ***********
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The Industrial Commission has jurisdiction over this matter, and plaintiff was an employee of defendant at the time in question. Defendant was a qualified self-insurer.
2. Plaintiff has been out of work from October 7, 2002 through the present.
3. Plaintiff's average weekly wage was $366.51, yielding a compensation rate of $244.34.
4. The parties stipulated into evidence the following at the hearing before the Deputy Commissioner:
a. Stipulated Exhibit #1-Pre-trial Agreement
b. Stipulated Exhibit #2-Plaintiff's Answers and Response to Defendant's First Set of Interrogatories and Request for Production of Documents.
c. Stipulated Exhibit #3-letter dated April 11, 2003 Plaintiff's personnel file was admitted into evidence at the Deputy Commissioner hearing as Defendant's Exhibit #1.
6. The depositions and records of Dr. Robert Irwin, Dr. Pirouz Daeihagh, Dr. Stewart Cooper, Cheryl Smith Glasgow, P.A., and Richard Leshock, P.A., are a part of the evidence of record.
7. The issues before the Commission are whether plaintiff sustained an injury by accident on October 7, 2001, and if so, to what benefits is she entitled.
 ***********
Based upon all the competent evidence in the record, the Full Commission makes the following:
 FINDINGS OF FACT
1. On October 7, 2001, plaintiff was working as a certified nursing assistant for defendant. In the course of that employment, she was working with a registered nurse, Jennifer Stanley, to clean a very heavy patient, who had diarrhea. Plaintiff and Ms. Stanley rolled the patient onto her side and Ms. Stanley held the patient in position, while plaintiff reached under the patient to clean her. Ms. Stanley lost her hold on the patient, and the patient rolled down onto plaintiff's right arm and shoulder.
2. Plaintiff felt a pop and an immediate onset of pain in her back area, but continued to work. However, over the next couple of hours, plaintiff's back pain became increasingly severe, until she was taken to defendant's emergency room by a co-worker. The emergency room physician diagnosed plaintiff with low back pain, but x-rays were taken of both the neck and the lower back. Plaintiff was instructed to work at light duty for the next three days and to follow up with her primary care physician.
3. On October 10, 2001, plaintiff was seen by Cheryl Glasgow, a physician's assistant, at defendant's employee health services department. Ms. Glasgow diagnosed plaintiff with cervical and lumbar strain and spasm, took plaintiff out of work until October 15, 2001, and gave her a restriction of no lifting greater than 40 pounds.
4. On October 15, 2001, plaintiff returned to see Ms. Glasgow, complaining of continued back pain. Ms. Glasgow allowed plaintiff to remain out of work until October 22, 2001, when she was to return to work with a 40-pound lifting restriction.
5. On October 24, 2001, plaintiff returned to Ms. Glasgow, reporting that she had attempted to return to light duty work two days earlier but had been sent home by her supervisor, because she was unable to do her work due to her pain. Ms. Glasgow scheduled plaintiff for physical therapy and kept plaintiff out of work.
6. On November 2, 2001, Ms. Glasgow reported that plaintiff was not showing any improvement in mobility. Ms. Glasgow noted that a functional capacity evaluation might be helpful to determine if there was symptom magnification or a lack of effort on plaintiff's part. She continued plaintiff out of work.
7. On November 16, 2001 Ms. Glasgow saw plaintiff again and referred her for an evaluation by an orthopedic specialist, and kept plaintiff out of work until she could be seen by a specialist. Ms. Glasgow noted on November 16, 2001 that plaintiff's lumbar strain was not improving. Ms. Glasgow did not see plaintiff again following this appointment.
8. On November 21, 2001, plaintiff was seen by Rich Leshock, a physician's assistant at CompRehab in defendant's orthopedics department. He diagnosed plaintiff with mechanical low back pain and referred plaintiff to Dr. Robert Irwin, a physical medicine and rehabilitation specialist who also worked for CompRehab.
9. Plaintiff was seen by Dr. Irwin on January 17, 2002. Dr. Irwin diagnosed plaintiff with fibromyalgia, prescribed medications and referred her for physical therapy. Dr. Irwin noted on January 17, 2002 that plaintiff was not fit for any duty, and ordered her out of work until re-evaluation on May 2, 2002.
10. Prior to the time plaintiff was seen by Dr. Irwin, defendant had been paying her medical bills and paying her compensation benefits for the time plaintiff had been taken out of work as a result of her October 7, 2001 back injury. Defendant made these medical and compensation payments to plaintiff pursuant to an I.C. Form 63, filed on November 17, 2001.
11. Defendant stopped paying plaintiff's compensation benefits and sometime after plaintiff's January 17, 2002 appointment with Dr. Irwin, defendant stopped paying plaintiff's medical compensation pursuant to an I.C. Form 61, filed on December 3, 2001. The grounds listed on the form for defendant's denial of plaintiff's claim were plaintiff's credibility, the extent of her disability, and whether plaintiff sustained a compensable injury by accident.
12. Dr. Stewart Cooper was plaintiff's primary care physician who treated plaintiff's diabetes and high blood pressure and did not treat her for any work-related disability. Dr. Cooper saw plaintiff four times between May and December 2002 and she never complained about back pain. At the visit on October 11, 2002, three weeks prior to the Deputy Commissioner hearing, plaintiff told Dr. Cooper that she was "doing well in general." At the Deputy Commissioner hearing on October 31, 2002, plaintiff testified that she had pain from her neck across her shoulder blades, lower back pain that felt like a "sharp jab," and pain in her legs. In contrast, when plaintiff next saw Dr. Cooper on December 11, 2002, she again reported that she was "doing well" and did not mention any back pain.
13. Dr. Pirouz Daeihagh treated plaintiff for problems associated with her kidneys. Plaintiff had diabetes mellitus and was insulin dependent. Plaintiff's diabetic problems, although serious, were not debilitating.
14. All medical treatment plaintiff received for her October 7, 2001 work injury was provided by defendant's employees. As a result of this medical treatment following plaintiff's back injury and due to her ongoing back pain, she was taken out of work until May 2, 2002.
15. Fibromyalgia is a chronic muscle strain that is generally associated with some sort of trauma, even though it may have other causes associated with it. The Full Commission finds Dr. Irwin competent to diagnose fibromyalgia and gives greater weight to his opinions than other medical providers as to the causes of plaintiff's fibromyalgia. Dr. Irwin testified and the Commission finds that plaintiff had fibromyalgia or chronic muscle strain which was caused by or aggravated by her work-related injury on October 7, 2001.
16. The Full Commission finds there has been no evidence presented that plaintiff has been taken out of work or placed under any work restrictions by any physician since May 2, 2002, as a result of her October 7, 2001 work-related back injury.
17. There has been no evidence presented that plaintiff looked for any other employment following May 2, 2002, and that she was unable to obtain such employment as a result of her October 7, 2001 work-related back injury.
18. Plaintiff has failed to prove by the greater weight of the competent credible evidence and medical testimony of record that her inability to obtain any employment subsequent to May 2, 2002, was in any way related to her October 7, 2001 work-related back injury.
19. The Full Commission finds plaintiff has shown by the greater weight of the evidence that she sustained an injury by accident to her back on October 7, 2001, resulting in fibromyalgia or chronic muscle strain.
20. As a direct and proximate result of plaintiff's injury by accident on October 7, 2001, and her resulting medical conditions to her back, plaintiff was disabled from any employment from October 7, 2001 until May 2, 2002.
21. Plaintiff has not been evaluated for any permanent impairment.
22. The Full Commission finds that defendant did not unreasonably defend this claim.
 ***********
Based upon the following foregoing stipulations and findings of fact the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On October 7, 2001, plaintiff sustained an injury by accident to her back, resulting in fibromyalgia which was caused or aggravated by the work-related injury. N.C. Gen. Stat. §97-2(6).
2. Defendants denied compensability of plaintiff's injury by accident by filing a Form 61 on December 3, 2001. Therefore, there is no presumption of continuing disability and the burden of proving disability remains with plaintiff. Sims v.Charmes/Arby's Roast Beef, 142 N.C. App. 154, 542 S.E.2d 277,disc. rev. denied, 353 N.C. 729, 550 S.E.2d 782 (2001).
3. In order to meet the burden of proving disability, plaintiff must prove that she was incapable of earning pre-injury wages in either the same or in any other employment and that the incapacity to earn pre-injury wages was caused by plaintiff's injury. Hilliard v. Apex Cabinet Co., 305 N.C. 593,290 S.E.2d 682 (1982). An employee may meet the initial burden of proof by producing one of the following: (1) medical evidence that he is physically or mentally, as a result of the work-related injury, incapable of work in any employment; (2) evidence that he is capable of some work, but that he has, after a reasonable effort, been unsuccessful in his efforts to obtain employment; (3) evidence that he is capable of some work, but that it would be futile because of preexisting conditions, such as age, inexperience, or lack of education, to seek employment; or (4) evidence that he has obtained other employment at wages less than his pre-injury wages. Demery v. Perdue Farms, Inc.,143 N.C. App. 259, 545 S.E.2d 485, aff'd per curiam, 354 N.C. 355,554 S.E.2d 337 (2001); Russell v. Lowes Product Distribution,108 N.C. App. 762, 425 S.E.2d 454 (1993). When a plaintiff meets his burden of showing disability, the burden then shifts to defendants to produce evidence that suitable jobs are available for the employee and that the employee is capable of obtaining a suitable job, taking into account both physical and vocational limitations. Demery v. Perdue Farms, Inc., supra.
4. In the case at bar, plaintiff failed to prove by the greater weight of the evidence that as the result of her compensable injury by accident she was physically disabled from employment after May 2, 2002. Demery v. Perdue Farms., Inc., supra. No doctor took plaintiff out of work or imposed any work restrictions after May 2, 2002, she has not looked for work, and there is no evidence that it would be futile for her to look for employment.
5. As a direct and proximate result of plaintiff's injury by accident on October 7, 2001, plaintiff was disabled from any employment from October 7, 2001 until May 2, 2002 and is entitled to payment of temporary total disability compensation at the rate of $244.34 per week from October 7, 2001 until May 2, 2002. N.C. Gen. Stat. § 97-29.
6. Plaintiff is entitled to have defendant provide all medical treatment necessitated by her October 7, 2001 compensable injury by accident and resulting fibromyalgia. N.C. Gen. Stat. §§ 97-25 and 97-2(19).
7. Plaintiff has not been evaluated for any permanent impairment and this issue is reserved for future determination. N.C. Gen. Stat. § 97-31(23).
8. The defense of this claim was reasonable and not stubborn, unfounded litigiousness and, therefore, plaintiff is not entitled to attorney's fees pursuant to N.C. Gen. Stat. § 97-88.1.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendant shall pay temporary total disability compensation to plaintiff at a rate of $244.34 per week from October 7, 2001 until May 2, 2002. This amount is subject to an attorney's fee approved below, and subject to a credit for defendant for any temporary total disability compensation already paid plaintiff. Such amount has accrued and shall be paid in a lump sum.
2. Defendant shall pay all medical expenses incurred or to be incurred by plaintiff as a result of her compensable injury by accident for so long as such may reasonably be required to effect a cure, give relief or lessen plaintiff's period of disability.
A reasonable attorney's fee of 25% of the compensation due plaintiff under paragraph #1 of this Award is approved for plaintiff's counsel and shall be paid directly to plaintiff's counsel.
4. Defendant shall pay the costs, including expert witness fees.
This the ___ day of April 2004.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/____________ BUCK LATTIMORE CHAIRMAN
DISSENTING:
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER